723 P.2d 644

The STATE of Arizona ex rel. Thomas
E. COLLINS, Maricopa County
Attorney, Petitioner,

v.

The SUPERIOR COURT OF MARICOPA
COUNTY; the Honorable Jeffrey S.
Cates, Judge of the Superior Court, Re-
spondents,

and

Patricia MITTENTHAL, Real
Party in Interest.

No. 18485–SA.

Supreme Court of Arizona,
En Banc.

May 23, 1986.

Thomas E. Collins, Maricopa Co. Atty. by
John Birkemeier, Deputy Maricopa Co.
Atty., Phoenix, for petitioner.

Debus, Bradford and Kazan, Ltd. by Lar-
ry L. Debus, Phoenix, for real party in
interest.

HOLOHAN, Chief Justice.

The State seeks special action relief from
a ruling by the respondent superior court
judge that A.R.S. § 13–3994(D) is unconsti-
tutional.[1] The special action petition in-
cluded a request that this court stay the
trial court's order to release Patricia Mit-
tenthal after her acquittal of attempted
murder on grounds of insanity. We denied
the requested stay. We have accepted jur-
isdiction pursuant to Ariz. Const. art. 6
§ 5(1); Rule 8, Ariz. Rules of Special Ac-
tion, 17A A.R.S.

On November 13, 1984, Mittenthal shot
and wounded one Gail Taskila. She was
charged by indictment with one count of
attempted murder. At trial, Mittenthal as-
serted the defense of temporary insanity.
On November 4, 1985, the jury returned a
verdict of not responsible for criminal con-
duct by reason of insanity. Counsel met
with the trial judge that same day in cham-
bers to make findings required under

---

1. A.R.S. § 13–3994 provides in pertinent part as
follows:

  A. A person who is found not responsible
for criminal conduct pursuant to § 13–502
shall be committed to a secure mental health
evaluation or treatment agency until the per-
son is eligible for release pursuant to this
section.

  B. A person committed pursuant to sub-
section A of this section is entitled to a hear-
ing within fifty days of his confinement to
determine whether he is entitled to release
from confinement....

  C. If a person seeking release from con-
finement pursuant to subsection A of this sec-

tion proves by clear and convincing evidence
that he is either no longer suffering from the
mental disease or defect established pursuant
to § 13–502 or no longer a danger to himself
or others, the person shall be released....

  D. If the court finds pursuant to § 13–502,
subsection D, that the act or acts committed
by the person involved physical injury or a
substantial risk of physical injury to another,
the person is not eligible for conditional re-
lease pursuant to subsection D [sic, for C] of
this section until at lease two hundred thirty
days have elapsed from the date of the initial
commitment made pursuant to subsection A
of this section.

A.R.S. § 13–502(D). This subsection requires the court, after acquittal of a defendant on grounds of insanity, to make findings as to whether the defendant's acts "involved physical injury ... to another." The court found that Mittenthal's conduct had involved physical injury to the victim.

After hearing arguments from counsel on the constitutionality of A.R.S. § 13–3994(D), providing for a mandatory period of commitment for persons acquitted by reason of insanity, the trial judge concluded that A.R.S. § 13–3994(D) is "unconstitutional and unenforceable as to the defendant by reason of the commitment ... bearing no reasonable resemblance to the purpose for which the defendant would be committed and for its failure to provide for a release upon a showing of recovered sanity ..." (R.T. Nov. 13, 1985 at p. 18).[2] The court denied the State's motion that the defendant be confined. Defendant was ordered released and her appearance bond was ordered exonerated. It is from this trial court ruling that the State seeks relief by this special action.

The sole issue before this court is whether the mandatory commitment provisions of A.R.S. § 13–3994(D) are constitutional. There is a strong presumption in favor of the validity and constitutionality of legislative enactments. *Mardian Constr. Co. v. Superior Court*, 113 Ariz. 489, 557 P.2d 526 (1976).

A.R.S. § 13–3994(D) requires that a defendant acquitted by reason of insanity must be committed for at least 230 days before becoming eligible for release. "[C]ommitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Addington v. Texas*, 441 U.S. 418, 425, 99 S.Ct. 1804, 1809, 60 L.Ed.2d 323, 330–31 (1979). Unconditional commitment regardless of

mental condition therefore strongly implicates a person's liberty interests.

In *Jones v. United States*, 463 U.S. 354, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983), the United States Supreme Court upheld the constitutionality of a District of Columbia statute similar to A.R.S. § 13–3994(B), providing for a release hearing within fifty days of commitment after an insanity acquittal. The Supreme Court found little risk of erroneous deprivation of the defendant's liberty interest. "The fact that a person has been found, beyond a reasonable doubt, to have committed a criminal act certainly indicates dangerousness." *Id.* at 364, 103 S.Ct. at 3049, 77 L.Ed.2d at 705. The Supreme Court accepted as not unreasonable a congressional determination that the insanity acquittal supports an inference of continuing mental illness. The inference is sufficient for automatic commitment, at least where the statutory scheme provides for a hearing within fifty days of the commitment. *Id.* at 366, 103 S.Ct. at 3050, 77 L.Ed.2d at 706. The Court saw no real value in the additional procedural safeguard of a *de novo* commitment hearing for the person acquitted. On the contrary, it emphasized

> the Government's strong interest in avoiding the need to conduct a *de novo* commitment hearing following every insanity acquittal.... Instead of focusing on the critical question whether the acquittee has recovered, the new proceeding likely would have to relitigate much of the criminal trial.

*Id.* Citing the legitimate government purposes of committing a person acquitted by reason of insanity for treatment and the protection of society, the Court held a finding of not guilty by reason of insanity sufficient foundation for that commitment. *Id.*

---

2. The statutes concerning the disposition of persons acquitted by reason of insanity make no distinction between temporary and chronic insanity. As a result, individuals like the defendant in this case—whom the trial court found "no longer a danger to herself or society" (R.T. Nov. 13, 1985 at 1–7)—must be committed automatically despite having demonstrably regained their sanity and no longer being dangerous. Because we have decided this case on the constitutionality of A.R.S. § 13–3994(D) as written, we need not reach the issue of whether it is unconstitutional as applied to the temporarily insane.

The *Jones* case mentions two governmental interests, treatment of the individual's illness and the protection of the acquittee and society from his potential dangerousness. *Id.* at 368, 103 S.Ct. at 3051, 77 L.Ed.2d at 708. The State may legitimately confine individuals who are dangerous to themselves or to others and who are also in need of treatment. *See Jones*, at 361–62, 103 S.Ct. at 3048, 77 L.Ed.2d at 703.

In *Application of Downing*, 103 Idaho 689, 652 P.2d 193 (1982), the Supreme Court of Idaho faced a challenge to its automatic commitment provision. The Idaho court cited a third legitimate reason for post-acquittal commitment in such cases: "It is generally held that a person acquitted of a crime by reason of insanity may be held without right to petition for release *until a reasonable time has elapsed* for the detaining authorities *to evaluate the committed person's mental condition.*" *Id.* at 697, 652 P.2d at 201 (citations omitted, emphasis supplied); *accord, State v. Field*, 118 Wis.2d 269, 281, 347 N.W.2d 365, 371 (1984). The Idaho statute in *Downing* did pass constitutional scrutiny, despite its provision that a committed person's application for release "need [not] be considered until he has been confined for a period of not less than six (6) months ..." *Downing, supra*, 103 Idaho, at 697, 652 P.2d at 201. The court found the statute reasonable in great part because it contained a safeguard: the state director of health and welfare had a continuing obligation to monitor the committed person and to petition for release when that individual was no longer dangerous, regardless of the six-month confinement provision. *Id.* at 699, 652 P.2d 203. A.R.S. § 13–3994(D) contains no such safeguard.

The State cites Colorado and California as examples of states whose lengthy and strict post-acquittal commitment provisions have withstood constitutional challenge. Although the two statutory schemes differ, they both exhibit concern that hospital-ization occur for treatment and for protection of society. Colorado's automatic commitment statute grants a person an unconditional right to a release hearing 180 days following the commitment order. *People v. Chavez*, 629 P.2d 1040 (Colo.1981). At the same time, the statute "also permits the court to order a release hearing *at any time* on its own motion. Furthermore, an expedited release by the hospital authority is authorized when it determines the defendant no longer requires hospitalization." *Id.* at 1049 (emphasis in original); Colo. Rev.Stat. § 16–8–115, –116 (1985). While Colorado thus denies the person the right to a hearing for six months, it tempers that denial by allowing the court or hospital authorities to release the person earlier.

California's provision for a 90 day commitment without a hearing likewise was held constitutional. *In re Franklin*, 7 Cal.3d 126, 101 Cal.Rptr. 553, 496 P.2d 465 (1972).[3] In California, however, the commitment is at the discretion of the court, following a summary inquiry into the person's mental condition. California Penal Code section 1026 reads in pertinent part:

> (a) ... If the verdict or finding is that the defendant was insane at the time the offense was committed, the court, *unless it shall appear to the court that the sanity of the defendant has been recovered fully*, shall direct that the defendant be confined in a state hospital for the care and treatment of the mentally disordered ... or the court may order the defendant placed on outpatient status....

Cal. Penal Code § 1026 (West 1985) (emphasis supplied). Prior to ordering a person committed, the court must order an evaluation of the defendant's mental state. *Id.*, subsection (b). California's commitment statute therefore is not automatic, in that it interposes a mental health evaluation to determine the appropriateness of commitment between the time of the acquittal and commitment to inpatient or outpatient care.

---

**3.** From January 1, 1986 until January 1, 1989 the period of commitment prior to hearing is an unconditional *180* days.

Inasmuch as A.R.S. § 13–3994(D) provides for neither possible early release on the initiative of the court or the hospital nor precommitment examination to determine the existence or extent of mental disease after acquittal, it does not provide as much due process protection as the Colorado or California automatic commitment statutes.

The Court in *Jones* relied on the release provision of the District of Columbia statute to alleviate possible due process ills. In the words of Justice Powell, "Because a hearing is provided within 50 days of the commitment, there is assurance that every acquittee has *prompt opportunity to obtain release if he has recovered.*" 463 U.S. at 366, 103 S.Ct. at 3050, 77 L.Ed.2d at 706. (emphasis supplied) Subsection (D) of A.R.S. § 13–3994 contains no such assurance. Even if a person has regained a stable mental state within the normal range, he or she simply cannot get a hearing until 230 days have passed. The absolute waiting period of 230 days represents a severe limit on liberty.

If there were a legitimate governmental interest to outweigh this severe curtailment of liberty, then the provision could nonetheless be constitutional. We have already considered several possibilities. The *Jones* Court acknowledged that punishment, another governmental interest, is not a legitimate interest with regard to persons acquitted by reason of insanity. The person has not been convicted of a crime and cannot be punished. 463 U.S. at 369, 103 S.Ct. at 3052, 77 L.Ed.2d at 708. Several commentators have noted that legislatures and courts nevertheless often justify lower commitment standards for such persons— as opposed to involuntary civil committees—by focusing on the criminal act actually committed. *See generally* Comment, *Commitment Following an Insanity Acquittal,* HARV.L.REV. 605, 617–22 (1981); Note, *Throwing Away the Key: Due Process Rights of Insanity Acquittees in Jones v. United States* 34 AMER.U.L. REV. 479, 515–517 (1985). Despite the pull of popular sentiment towards retribution against mentally ill individuals who commit criminal, otherwise punishable acts, the long standing policy of this state has been that persons who are insane are not responsible for criminal conduct and are therefore not subject to punishment. A.R.S. § 13– 502.

Even where the government does have a legitimate reason to confine persons acquitted by reason of insanity, that commitment may be indefinite but not unconditional. "Due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *Jackson v. Indiana,* 406 U.S. 715, 738, 92 S.Ct. 1845, 1858, 32 L.Ed.2d 435, 451 (1972). Confinement to a mental institution may not constitutionally continue after the basis for confinement no longer exists. *O'Connor v. Donaldson,* 422 U.S. 563, 575, 95 S.Ct. 2486, 2493, 45 L.Ed.2d 396 (1975).

When the basis for commitment does not exist, the state no longer has an interest in limiting the acquittee's liberty. Without procedural safeguards insuring the timely termination of confinement, the risk of erroneous deprivation of liberty becomes a certitude, and continued confinement becomes a denial of due process of law.

Statutory schemes providing for automatic commitment for those acquitted by reason of insanity, therefore, have frequently been held constitutional because they contain release provisions sensitive to and triggered by patients' recovery of sanity. *See Jones v. United States, supra; Application of Downing, supra. See also Application of Jones,* 228 Kan. 90, 100, 612 P.2d 1211, 1222 (1980) (continuing obligation of chief medical officer of state security hospital to notify court officials of individual's recovered sanity allows automatic commitment statute to meet due process standard).

The requirement for a hearing within fifty days of confinement under A.R.S. § 13–3994(B) is flexible and responsive to a patient's improved mental condition. Under the federal Constitution and the United States Supreme Court decision of *Jones v.*

*United States,* the provisions of A.R.S. § 13–3994(B) pass muster. The Arizona legislature, in fact, was careful to draft the provision "based on the language of the Supreme Court decision in the case of *Jones vs. U.S.*" House Committee on Public Institutions Minutes, Feb. 7, 1984. It succeeded in following *Jones* in subsection (B). But subsection (D) of the statute contains language fundamentally different than subsection (B).

In contrast, A.R.S. § 13–3994(D) contains no provision flexible enough to allow for evaluation or recovery before 230 days have elapsed. When a person acquitted by reason of insanity no longer suffers from a mental disease or defect, he or she requires neither treatment nor confinement. The State thus has no interest in confining the individual other than for punishment, which is not a legitimate governmental interest for those found not guilty by reason of insanity. A.R.S. § 13–3994(D) absolutely denies persons acquitted by reason of insanity the possibility of a release hearing to determine recovered sanity before 230 days have passed. We hold that it denies these persons due process of law and that it is therefore unconstitutional. The decision of the trial court was correct. The relief sought by the State is denied.

GORDON, V.C.J., and CAMERON and FELDMAN, JJ., concur.

HAYS, J., did not participate in the determination of this matter.