730 P.2d 883

**STATE of Arizona, Appellee,**

v.

**Walter A. RAMBEAU, Appellant.**

**No. 1 CA–CR 9618.**

Court of Appeals of Arizona,
Division 1, Department D.

Dec. 18, 1986.

---

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Chief Counsel Crim. Div. and Janet Keating, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Stephen R. Collins, Deputy Public Defender, Phoenix, for appellant.

## OPINION

HAIRE, Judge.

The trial court found appellant not guilty of arson of an occupied structure by reason of insanity pursuant to A.R.S. § 13–502.[1]

**1.** A.R.S. § 13–502 states:

"A. A person is not responsible for criminal conduct by reason of insanity if at the time of such conduct the person was suffering from such a mental disease or defect as not to know the nature and quality of the act or, if such person did know, that such person did not know that what he was doing was wrong.

"B. The defendant shall prove he is not responsible for criminal conduct by reason of insanity by clear and convincing evidence.

"C. If the trier of fact finds the defendant not responsible for criminal conduct pursuant to this section, its verdict shall state this finding.

"D. The court shall make findings as to the acts the defendant committed, as to whether such acts involved physical injury or a substantial risk of physical injury to another and as to the offense, if any, of which the defendant would have been convicted if he had been found responsible for criminal conduct."

A.R.S. § 13–3994 provides as follows:

"A. A person who is found not responsible for criminal conduct pursuant to § 13–502 shall be committed to a secure mental health evaluation or treatment agency until the person is eligible for release pursuant to this section.

"B. A person committed pursuant to subsection A of this section is entitled to a hearing within 50 days of his confinement to determine whether he is entitled to release from confinement. A person committed or the physician or psychologist treating the person committed may not seek a new release hearing less than six months after any prior release hearing. The court shall send notice of the hearing to the attorney general and the county attorney for the county where the person was charged with the offense from which commitment for evaluation arose. The attorney general or county attorney may appear to represent the interests of this state.

"C. If a person seeking release from confinement pursuant to subsection A of this section proves by clear and convincing evidence that he is either no longer suffering from the mental disease or defect established pursuant to § 13–502 or no longer a danger to himself or others, the person shall be released. If a person seeking release from confinement pursuant to subsection A of this section proves by clear and convincing evidence that the factors specified in § 36–540.01, subsection A, paragraphs 1, 2, 3 and 4 apply to the person, the court may order the person's conditional re-

Pursuant to subsection (D) of that statute, the trial court specifically found that, but for appellant's insanity, he would have been convicted of arson of an occupied structure, and specifically found that appellant's acts involved a substantial risk of physical injury to another. Because A.R.S. § 13–3994 mandates automatic commitment for anyone found not guilty by reason of insanity under § 13–502, the trial court ordered that appellant be committed to the Arizona State Hospital forthwith. On appeal, appellant asserts that A.R.S. § 13–3994 is unconstitutional and asks this court to vacate the trial court's order committing him to the state hospital. For the reasons set forth below, the trial court's order committing appellant to the state hospital is affirmed.

Shortly after appellant filed his opening brief in this court, the Arizona Supreme Court decided *State v. Superior Court (Mittenthal, Real Party in Interest)*, 150 Ariz. 295, 723 P.2d 644 (1986). In *Mittenthal*, the state filed a special action in the Arizona Supreme Court challenging a trial court ruling that A.R.S. § 13–3994(D) was unconstitutional. The operative facts in that case are almost identical to the facts here. Mittenthal, the real party in interest, had been found not guilty of attempted murder by reason of insanity, pursuant to A.R.S. § 13–502. Under subsection (D) of that statute, the trial court, as required, made findings that the defendant's acts involved physical injury or a substantial risk of physical injury to others. The state then sought commitment of Mittenthal pursuant to A.R.S. § 13–3994(D). The trial court ruled that subsection (D) was unconstitutional and refused to require the commitment of Mittenthal. In its review of the

trial court's action, the Arizona Supreme Court interpreted § 13–3994(D) as requiring the commitment of a defendant acquitted by reason of insanity for a minimum of 230 days before becoming eligible for release and, as so interpreted,[2] agreed that subsection (D) was unconstitutional.

In its opinion, however, the Arizona Supreme Court specifically noted that, unlike subsection (D), the provisions of subsection (B) of § 13–3994 did "pass muster" under the federal constitution and the United States Supreme Court decision of *Jones v. United States*, 463 U.S. 354, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983). Subsection (B)'s requirement for a hearing within 50 days after commitment was found to be flexible and responsive to a patient's improved mental condition. In arriving at this conclusion, the Arizona Supreme Court relied on the Court's statement in *Jones* that "[b]ecause a hearing is provided within 50 days of the commitment, there is assurance that every acquittee has prompt opportunity to obtain release if he has recovered." *Id.*, 463 U.S. at 366, 103 S.Ct. at 3050, 77 L.Ed.2d at 706.

The court's findings regarding subsection (B) raise the question of whether subsection (D) can be severed from the remainder of the statute. An entire statute need not and should not be declared unconstitutional if constitutional provisions can be separated. *Cohen v. State*, 121 Ariz. 6, 588 P.2d 299 (1978); *State v. Jones*, 142 Ariz. 302, 689 P.2d 561 (App.1984). The test for severability is one of ascertaining legislative intent. *Cohen*, 121 Ariz. at 9, 588 P.2d at 302. If an unconstitutional provision of a statute can be eliminated, leaving a com-

---

lease subject to the provisions of § 36–540.01, subsections B, C, E, F, G, H, I, K and L. "D. If the court finds pursuant to § 13–502, subsection D, that the act or acts committed by the person involved physical injury or a substantial risk of physical injury to another, the person is not eligible for conditional release pursuant to subsection D [sic for C] of this section until at least two hundred thirty days have elapsed from the date of the initial commitment made pursuant to subsection A of this section."

**2.** In its answering brief filed in this appeal the state persuasively argues that the Arizona Supreme Court erred in its interpretation of § 13–3994(D), and urges that, correctly interpreted, subsection (D) is applicable only to a "conditional" release, and thus is not constitutionally defective. Because this court is bound by the supreme court's interpretation of subsection (D), *see McKay v. Industrial Commission*, 103 Ariz. 191, 438 P.2d 757 (1968), we have assumed for the purposes of this opinion that subsection (D) is unconstitutional.

plete statute whose meaning and effect is not repugnant to the original law, the remainder of the statute will stand. *State v. Jones,* 142 Ariz. at 305–306, 689 P.2d at 564–565.

■ Citing *Jones v. United States,* the *Mittenthal* court noted the dual governmental interests in committing a person acquitted by reason of insanity: for treatment of the individual's illness and for protection of the acquittee and society from his potential dangerousness. *Id.,* 723 P.2d at 646. Against these governmental interests, the state must provide procedural safeguards to prevent the erroneous deprivation of the acquittee's liberty when the reasons for commitment no longer exist. *Id.* at 647. If subsection (D) is severed, A.R.S. § 13–3994 still requires commitment of a person found not guilty by reason of insanity, fulfilling the legislative intent of providing treatment for the acquittee and protection for the acquittee and society. The statute remains complete, its provisions consistent with the original law. Furthermore, as the *Mittenthal* court found, subsection (B) provides a procedural safeguard to protect the acquittee's liberty interest. We therefore conclude that subsection (D) of A.R.S. § 13–3994 is severable from the remainder of the statute and that subsection (B) provides an adequate and constitutional basis for the issuance of the trial court's commitment order in this case.

■ Appellant raises additional challenges to the constitutionality of § 13–3994, contending that subsection (A) is unconstitutional because (1) it mandates automatic commitment, thus denying a defendant the opportunity to show sanity prior to commitment, and (2) it punishes a defendant for his status. As to appellant's first contention, the United States Supreme Court has upheld the constitutionality of automatic commitment after an insanity acquittal, if the statutory scheme provides for a hearing within a reasonable time thereafter. *See Jones v. United States,* 463 U.S. at 366, 103 S.Ct. at 3050, 77 L.Ed.2d at 706. In *Jones,* the Court upheld the constitutionality of a District of Colum-

bia statute very similar to A.R.S. § 13–3994. The statutes at issue in *Jones* provided for a release hearing within 50 days of the automatic commitment after an insanity acquittal. As such, the Supreme Court found little risk of erroneous deprivation of the defendant's liberty interest. "The fact that a person has been found, beyond a reasonable doubt, to have committed a criminal act certainly indicates dangerousness." *Id.,* 463 U.S. at 364, 103 S.Ct. at 3049, 77 L.Ed.2d at 705. Additionally, the Supreme Court accepted a congressional determination that the insanity acquittal itself supports an inference of continuing mental illness. The Court reasoned that the inference of continuing mental illness was sufficient to justify automatic commitment, at least when the statutory scheme provided for a hearing within 50 days of the commitment. *Id.,* 463 U.S. at 366, 103 S.Ct. at 3050, 77 L.Ed.2d at 706. The Court saw no real value in the additional procedural safeguard of a *de novo* commitment hearing for the person acquitted. On the contrary, it emphasized:

> "the Government's strong interest in avoiding the need to conduct a *de novo* commitment hearing following every insanity acquittal.... Instead of focusing on the critical question whether the acquittee has recovered, the new proceeding likely would have to relitigate much of the criminal trial." *Id.*

The Court relied in part on the legitimate government purposes of committing a defendant acquitted by reason of insanity for the treatment of the acquittee and for the protection of society. For these reasons the Court held that a finding of not guilty by reason of insanity was sufficient foundation for automatic commitment.

■ As to appellant's contention that A.R.S. § 13–3994 is unconstitutional because it punishes a defendant for his status, appellant confuses automatic commitment to a state mental hospital with incarceration in a state penal institution. This argument was also raised and rejected in *Jones* :

"A particular sentence of incarceration is chosen to reflect society's view of the proper response to commission of a particular criminal offense, based on a variety of considerations such as retribution, deterrence, and rehabilitation. [Citations omitted.] The State may punish a person convicted of a crime even if satisfied that he is unlikely to commit further crimes.

"Different considerations underlie commitment of an insanity acquittee. As he was not convicted, he may not be punished. His confinement rests on his continuing illness and dangerousness.... [N]o matter how serious the act committed by the acquittee, he may be released within 50 days of his acquittal if he has recovered. In contrast, one who committed a less serious act may be confined for a longer period if he remains ill and dangerous. There simply is no necessary correlation between severity of the offense and length of time necessary for recovery." *Id.*, 463 U.S. at 368–369, 103 S.Ct. at 3052, 77 L.Ed.2d at 708. (Footnote omitted).

 Because automatic commitment of a defendant to a mental health agency, after a verdict of not guilty by reason of insanity, is constitutional, we hold that the trial court did not err in entering its order committing appellant to the state hospital. In accordance with § 13–3994(B) and (C), appellant is entitled to a hearing within 50 days of his commitment to determine whether he should be released because he is either no longer suffering from the mental disease or defect or no longer a danger to himself or others.

The order of commitment entered by the trial court is affirmed.

EUBANK, P.J., and GRANT, J., concur.