846 P.2d 151

**STATE of Arizona, Appellee,**

v.

**Robert Anthony HELFFRICH,
Appellant.**

**No. 1 CA–CR 90–013.**

Court of Appeals of Arizona,
Division 1, Department A.

Aug. 27, 1992.

Reconsideration Granted, Opinion Amended
Nov. 13, 1992.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Appeals Section, Janet Keating McNaughton, Vicki Gotkin Adler, Asst. Attys. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by Helene F. Abrams, Terry J. Adams, Deputy Public Defenders, Phoenix, for appellant.

## OPINION

EHRLICH, Presiding Judge.

Robert Anthony Helffrich ("Helffrich") appeals from the denial of his motion to dismiss or, in the alternative, motion for unconditional release from the custody of the Arizona State Hospital ("hospital"). We affirm the trial court's order in part, reverse it in part and remand this matter for further proceedings in accordance with this decision.

### A. Facts and Procedural History

Helffrich was acquitted of aggravated assault because he was not responsible by reason of insanity. Ariz.Rev.Stat.Ann. section ("A.R.S. §") 13–502(A).[1] The trial court found that he would have been convicted as charged if found responsible and that his act involved a substantial risk of physical injury to another. A.R.S. § 13–502(D). Helffrich then was committed to the custody of the hospital. A.R.S. § 13–3994(A).

Approximately two months later, the medical director of the hospital filed a notice of intent to conditionally release Helffrich pursuant to A.R.S. § 13–3994(C) and § 36–540.01. Under § 13–3994(C), a person acquitted of criminal charges and committed to the hospital ("acquittee") may be conditionally released if he proves by clear and convincing evidence that he meets the criteria set forth in A.R.S. § 36–540.01(A).[2]

At the conditional release hearing, Helffrich moved for dismissal or unconditional

---

1. He suffers from bi-polar affective disorder, a permanent condition.

2. A.R.S. § 36–540.01(A) provides that a patient may be conditionally released if it is determined that:

release. He objected to conditional release, alleging that: (1) A.R.S. § 13–3994(C) violates due process by allowing an acquittee to be placed on conditional release for an indefinite period of time; (2) § 13–3994(C) violates equal protection because it allows an acquittee to be conditionally released for an indefinite period of time while a civilly-committed person is conditionally released for a specific time period; (3) § 13–3994(D) violates due process because it does not provide for a release hearing until an acquittee has been committed for 120 days; and (4) the evidence warranted unconditional release.

The trial court ordered Helffrich conditionally released, but requested additional memoranda on his arguments. After a supplemental hearing, the court ruled that Helffrich was not entitled to an unconditional release because he was still suffering from a mental disease or defect and that the statute's provision for indefinite conditional release was constitutional. It further held that the issue of the constitutionality of the 120–day release hearing period was moot. The prior order for Helffrich's conditional release was affirmed; his motion for dismissal or unconditional release was denied.

■ Helffrich timely appealed from the denial of his motion. On appeal, he reasserts his argument that various conditional release provisions under A.R.S. § 13–3994 are unconstitutional and that the trial court erred in failing to unconditionally release him.[3]

### B. Due Process Under A.R.S. § 13–3994(C)

Helffrich argues that A.R.S. § 13–3994(C) violates due process because it al-lows a person in his position to be subject to an indefinite period of conditional release. He contends that the trial court should have applied to the terms of his conditional release the provisions of A.R.S. § 36–540.01(D), which limits the length of conditional release to the remainder of a court-ordered treatment period.

■ In reviewing the constitutionality of a statute, the trial court has jurisdiction to uphold or strike the statute. However, under the separation of powers doctrine, neither it nor this court may, as Helffrich asks, alter the statute in an attempt to remedy a perceived constitutional infirmity. *Chevron Chemical Co. v. Superior Court*, 131 Ariz. 431, 440, 641 P.2d 1275, 1284 (1982); *Wilson v. Industrial Comm'n of Ariz.*, 147 Ariz. 261, 265, 709 P.2d 895, 899 (App.1985).

■ The amount of due process to which a person is entitled is directly related to the importance of the interest at stake and the degree of its impairment. *Morrissey v. Brewer*, 408 U.S. 471, 481–82, 92 S.Ct. 2593, 2600–01, 33 L.Ed.2d 484 (1972); *Haygood v. Younger*, 769 F.2d 1350, 1355–56 (9th Cir.1985). In *Jones v. United States*, 463 U.S. 354, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983), the Supreme Court upheld the indefinite commitment of those acquitted by reason of insanity. By definition, conditional release is a less restrictive form of treatment than commitment. Therefore, the liberty interest associated with conditional release is neither more important nor is its impairment greater than the liberty interest affected when a person is indefinitely committed. Accordingly, the standards set

---

1. The patient no longer requires continuous inpatient hospitalization.
2. The patient will be more appropriately treated in an outpatient treatment program.
3. The patient will follow a prescribed outpatient treatment plan.
4. The patient will not likely become dangerous, suffer more serious physical harm or serious illness or further deteriorate if he follows a prescribed outpatient treatment plan.

**3.** We need not address two of the defendant's arguments. He initially complained on appeal that A.R.S. § 13–3994(C) is unconstitutional because there is no express right to counsel or to judicial review when a person is alleged to have violated the terms of his conditional release, but the issue was waived in the reply brief. The defendant also asserted that § 13–3994(C) violates separation of powers principles because it conflicts with Arizona Rule of Criminal Procedure 25. However, because this argument is being raised for the first time on appeal, we decline to consider it. *State v. Takacs*, 169 Ariz. 392, 819 P.2d 978, 985 (App.1991).

by the Court in *Jones* will be held to meet or exceed the due process requirements for conditional release.

■ The statute interpreted in *Jones*, D.C.Code § 24–301(d)(1) (1981), provides that:

> If any person tried upon an indictment or information for an offense raises the defense of insanity and is acquitted solely on the ground that he was insane at the time of its commission, he shall be committed to a hospital for the mentally ill until such time as he is eligible for release pursuant to this subsection or subsection (e) of this section.

The Court held that the indefinite commitment of an acquittee did not violate the due process clause, even though the person may be hospitalized for a period longer than he might have spent in prison for the offense had he been convicted. 463 U.S. at 368, 103 S.Ct. at 3051. Due process requires only that " 'the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed.' " *Id.* (quoting *Jackson v. Indiana,* 406 U.S. 715, 738, 92 S.Ct. 1845, 1858, 32 L.Ed.2d 435 (1972)). In this relationship between the nature and duration of indefinite commitment and its purpose, "[t]he purpose of commitment following an insanity acquittal, like that of civil commitment, is to treat the individual's mental illness and protect him and society from his potential dangerousness." *Id.*

■ Similar to the District of Columbia statute, A.R.S. § 13–3994(A) states that "[a] person who is found not responsible for criminal conduct pursuant to § 13–502 shall be committed to a secure mental health evaluation or treatment agency until the person is eligible for release pursuant to this section." Then, before a person may be conditionally released, § 13–3994(C) provides that, pursuant to A.R.S. § 36–540.01(B), a written outpatient treatment plan must be prepared and approved by the mental health agency's medical director. The statute also requires that the medical

director order regular reports, not more than 30 days apart, on the conditionally-released person. If the medical director is not satisfied with the person's performance, he may amend the treatment plan or rescind the conditional release and order the person to return to the mental health facility. These statutory requirements reveal that the dual purpose behind the conditional release provisions is to treat the acquittee's mental health while also establishing prophylactic measures to protect him and society in the event he becomes dangerous. The nature and duration of conditionally releasing a person is reasonably related to the purpose of the release. Upon the direction of *Jones,* due process is not violated by conditionally releasing an acquittee for an indefinite period of time.

### C. *Equal Protection Under A.R.S. § 13–3994(C)*

■ Helffrich argues that A.R.S. § 13–3994(C) also violates equal protection because it allows persons in his position to be conditionally released for an indefinite period of time while, pursuant to A.R.S. § 36–540.01, civilly-committed people are conditionally released for a specific time period.[4] The state relies on *Jones,* 463 U.S. at 370, 103 S.Ct. at 3052, to argue to the contrary.

The Supreme Court in *Jones* implied that there was, for equal protection purposes, a rational basis for having different commitment standards and lengths for acquittees than for civilly-committed persons. It reasoned that, if due process was not violated by affording acquittees different procedural safeguards than civilly-committed persons, then "there necessarily is a rational basis for equal protection purposes for distinguishing between civil commitment and commitment of insanity acquittees." 463 U.S. at 362 n. 10, 103 S.Ct. at 3048 n. 10. This rationale appropriately is extended in application to the conditional release process.

■ As stated in *Jones,* "acquittees constitute a special class that should be treat-

---

**4.** In *State v. Clemons,* 110 Ariz. 79, 515 P.2d 324 (1973), a differing earlier version of the statute providing for commitment of persons acquitted by reason of insanity was declared violative of the equal protection clause.

ed differently from other candidates for commitment." 463 U.S. at 370, 103 S.Ct. at 3053. The special class status which *Jones* conferred upon acquittees at commitment is equally applicable as treatment continues because the nature of the class does not change as the individuals progress through therapy. Pursuant to A.R.S. § 13–3994(C), the provisions of A.R.S. § 36–540.01(B) are applicable to the conditional release of acquittees. As § 36–540.01(B) states, conditional release is a form of therapy requiring the preparation of a written outpatient treatment plan prior to an acquittee's conditional release.

Given that the Supreme Court in *Jones* instructed that acquittees and those persons civilly committed *should* be treated differently regarding commitment, 463 U.S. at 370, 103 S.Ct. at 3053, it follows that, at the very least, the groups *may* be subject to different conditional release procedures. Accordingly, there is a rational basis for permitting acquittees to be conditionally released for an indefinite period of time while persons civilly committed are conditionally released for specific time periods.

### D. Due Process Under A.R.S. § 13–3994(D)

■ Helffrich asserts that A.R.S. § 13–3994(D) violates due process because it provides that an acquittee found to have committed acts involving a substantial risk of physical injury to another is not eligible for release before 120 days of commitment have elapsed. Relying on *Jones*, he argues that a release hearing must be held no more than 50 days after an acquittee is committed. The state contends that the trial court was correct in declaring the issue moot. Even if the issue is not moot, the state argues, § 13–3994(D) is constitutional because the 50–day hearing entitlement of subsection (B) satisfies the due process requirements set forth in *Jones*. Regardless of whether the issue is moot, we will consider the merits because the

issue is of significant public importance and is likely to recur. *City of Flagstaff v. Mangum*, 164 Ariz. 395, 400, 793 P.2d 548, 553 (1990).

#### 1. 50–Day Release Hearing Entitlement

■ According to A.R.S. § 13–3994(B), an acquittee is "entitled" to a hearing within 50 days of commitment to determine if he is eligible for release. Helffrich did not receive a 50–day hearing nor did he request that one be held and, indeed, the statute does not specify whether the hearing is to be conducted automatically or whether the acquittee must request the hearing. When the statutory language gives rise to different interpretations, we will adopt the interpretation that is most harmonious with the statutory scheme and legislative purpose, *In re Arizona Appetito's Stores, Inc.*, 893 F.2d 216, 219 (9th Cir.1990); *see Lowry v. Tucson Diesel, Inc.*, 17 Ariz.App. 348, 350, 498 P.2d 160, 162 (1972), examining the policy behind the statute and the evil sought to be remedied, *e.g.*, *Carrow Co. v. Lusby*, 167 Ariz. 18, 21, 804 P.2d 747, 750 (1990); *State v. Korzep*, 165 Ariz. 490, 493, 799 P.2d 831, 834 (1990); *State ex rel. Ross v. Nance*, 165 Ariz. 286, 288, 798 P.2d 1295, 1297 (1990), and applying the ordinary meaning of words not specially defined. *E.g.*, *Mid Kansas Federal Savings & Loan Ass'n of Wichita v. Dynamic Development Corp.*, 167 Ariz. 122, 128, 804 P.2d 1310, 1316 (1991); *Carrow*, 167 Ariz. at 20, 804 P.2d at 749.

■ While the statute in *Jones* read that an acquittee "*shall* have a hearing, unless waived, within 50 days of his confinement ...," 463 U.S. at 357, 103 S.Ct. at 3046; D.C.Code § 24–301(d)(2)(A) (1981) (emphasis added),[5] the Arizona legislature phrased § 13–3994(B) as *entitling* an acquittee to a hearing; it did not require a waiver by the acquittee before such a hearing could be foregone. Use of the word "entitle" does not imply that the object is automatically given to the recipient, but only that he may receive it if he so elects.

---

5. *Cf.* Ga.Code § 17–7–131(e)(3): "The hearing *shall* be conducted at the earliest opportunity...." (emphasis added); Colo.Rev.Stat. § 16–8–115(1): "The court *shall* order a release hearing...." (emphasis added). *See Hewitt v.*

*Helms*, 459 U.S. 460, 471–72, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983) (statute's use of words "shall," "will" and "must" establishes mandatory directive).

*E.g., Webster's New Universal Unabridged Dictionary* (2d ed. 1983). Based upon the ordinary meaning of the word "entitle" and the legislative choice not to use the word "shall," we conclude that § 13–3994(B) affords an acquittee the opportunity to have a release hearing conducted within 50 days of commitment, but that the statute does not require that such a hearing be held absent a request by the acquittee.

### 2. Constitutionality of the 120–Day Conditional Release Hearing

■ In *State ex rel. Collins v. Superior Court (Mittenthal),* 150 Ariz. 295, 299, 723 P.2d 644, 648 (1986), the supreme court declared violative of due process an earlier version of A.R.S. § 13–3994(D), which imposed a 230–day mandatory commitment period prior to holding a release hearing for persons whose criminal acts involved a substantial risk of physical injury to another. However, the court recognized that 50 days was not the maximum period an acquittee could be committed before a release hearing was held and that longer time periods may be constitutional when alternative release methods are available. 150 Ariz. at 297–98, 723 P.2d at 646–47.

As an example of a constitutionally-acceptable alternative release procedure, the court reviewed a Colorado statute providing that, although the acquittee must be committed for 180 days before requesting a release hearing, a hearing may be held at any time pursuant to a court order or a report from the mental health institution that the acquittee no longer requires hospitalization. 150 Ariz. at 297, 723 P.2d at 646; Colo.Rev.Stat. § 16–8–115, –116 (1985).

The court also cited *Application of Downing,* 103 Idaho 689, 652 P.2d 193, 201 (1982), in which case a statute providing that an application for release " 'need [not] be considered until [the acquittee] has been confined for a period of not less than six (6) months ...' " was held to be constitutional. 150 Ariz. at 297, 723 P.2d at 646; I.C. § 18–

214(5). In determining the constitutionality of the statute, the court in *Downing* relied upon the provision allowing the state director of health and welfare to petition the court for release of the acquittee if the person is no longer dangerous at any time during the commitment. 652 P.2d at 203.

The Arizona legislature revised the statute to substitute 120 days for 230 days. A.R.S. § 13–3994(D).[6] This statute meets the requirements of due process because it reduces the maximum amount of time an acquittee must wait for a conditional release hearing to 120 days and also allows for an expedited hearing based upon a petition filed by the evaluating or treating agency stating that the acquittee is no longer suffering from a mental disorder or is no longer a danger to himself or others. This law is flexible and responsive to an acquittee's improved mental condition, thereby overcoming the criticism of the earlier statute by the court in *Mittenthal.*

### E. Sufficiency of Evidence Supporting Conditional Release

■ Helffrich argues that the trial court erred in failing to unconditionally release him because the uncontested evidence presented at the release hearing established that he is no longer a danger to himself or others. The state, citing *State v. Johnson,* 156 Ariz. 464, 753 P.2d 154 (1988), responds that the order was appropriate because Helffrich's dangerous condition has not been cured but is merely in remission due to treatment and medication. According to the state, because the evidence established that Helffrich would become a danger to himself or others if he discontinued his treatment and medication, he does not qualify for unconditional release.

Under A.R.S. § 13–3994(C), an acquittee is entitled to unconditional release if he proves either that he is no longer suffering from the mental disease or defect that made him not responsible for his criminal conduct or that he is no longer a danger to himself or others. Upon Helffrich's stipu-

---

**6.** The current version of A.R.S. § 13–3994(D) provides that "[i]f the court finds ... that the act or acts committed by the person involved physical injury or a substantial risk of physical injury to another, the person is not eligible for conditional release ... until at least one hundred twenty days have elapsed from the date of the initial commitment ..."

lation, the trial court determined that he still was suffering from his mental disorder as, in fact, he always will, and denied his request for unconditional release. However, the court did not rule on whether Helffrich met the alternative criterion for unconditional release of no longer being a danger to himself or others. Under the statute, an acquittee need only establish by clear and convincing evidence that he meets one of the criteria in order to be unconditionally released. Because the court did not determine whether Helffrich is a danger to himself or others, we remand this matter to the trial court for resolution upon the present record or after a hearing, at the election of Helffrich, of whether Helffrich should be unconditionally released upon this basis.

VOSS, J., and HAIRE, J., Retired, concur.

Note: The Honorable LEVI RAY HAIRE, a retired judge of the Arizona Court of Appeals, was authorized to participate in this appeal by order of the Chief Justice of the Arizona Supreme Court pursuant to art. VI, § 20, of the Arizona Constitution and A.R.S. § 38–813.